## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

In Re:

TODD M. STANWOOD,

DEBTOR

CHAPTER 7

CASE NO. 13- 14003- FJB

## MOTION OF THE NEWBURYPORT FIVE CENTS SAVINGS BANK
## FOR RELIEF FROM THE AUTOMATIC STAY

Now Comes the Newburyport Five Cents Savings Bank, a Secured Creditor of the

Debtor, Todd M. Stanwood, pursuant to 11 U.S.C. §362(d)(1) and §362(d)(2), Fed. R. Bankr. P.

4001, and Local Rule 4001-1, and hereby requests that the Court grant relief from the automatic

stay imposed by 11 U.S.C. Sec. 362(a), and in support thereof states as follows:

1.      On July 1, 2013, Todd M. Stanwood (hereinafter referred to as the "Debtor"), filed a

        voluntary petition under Chapter 7 of Title 11 of the United States Code in the United

        States Bankruptcy Court for the District of Massachusetts.

2.      The Newburyport Five Cents Savings Bank (hereinafter referred to as the "Bank") holds a

        first mortgage on property of the Debtor and co-owners, Scott Stanwood and Louis P.

        DeCaprio (hereinafter referred to as the "Co-Borrowers"), and known and numbered as  4

        Illsley Hill Road, West Newbury, Massachusetts 01985 (hereinafter referred to as the

        "Property").

3.      The Bank's first mortgage is dated November 15, 2003 and is recorded with the Essex

        South District Registry of Deeds at Book 22095, Page 273 (hereinafter referred to as the

        "Mortgage").  A copy of the Mortgage is attached hereto and is marked Exhibit A.

4.     The Mortgage secures a promissory note given by the Debtor and the Co-Borrowers, jointly and severally, to the Bank in the original principal amount of Three Million One Hundred Thousand and 00/100 Dollars ($3,100,000.00) (hereinafter referred to as the "Note"). A copy of the Note is attached hereto and is marked Exhibit B.

5.     The Mortgage and Note are now in default by reason of failure of the Debtor and Co-Borrowers to make payments of principal, interest, late fees and other amounts due thereunder. The last full payment of principal and interest made by Debtor was on July 6, 2011, and the Debtor is now twenty-four (24) months in arrears. As of the petition filing date, July 1, 2013, the pre-petition arrearage was $382,722.93. The mortgage was twenty-two (22) months in arrears at the time of the filing of the petition. As of the date of this Motion, the Debtors have failed to make any post-petition mortgage payments to the Bank.

6.     As of July 2, 2013, the outstanding balance due under the Note is $3,014,383.04, which includes the principal amount of $2,741,420.87, interest through July 2, 2013 in the amount of $240,255.08, late charges in the amount of $11,496.47, and expenses in the amount of $21,210.62. Interest continues to accrue at the per diem rate of $380.75.

7.     The Debtor and Co-Borrowers have failed to pay real estate taxes when due. According to the Town of West Newbury, Massachusetts the amount of real estate taxes that are past due and owing on the Property is $31,003.07 as of July 19, 2013.

8.     A Declaration of Homestead was recorded on July 21, 2011 at the Essex South District Registry of Deeds in Book 30541, Page 1.

9.     Upon information and belief, the Property is subject to the following encumbrances:

| Lien Holder | Type of Lien | Amount Owed | Priority |
|---|---|---|---|
| Newburyport Five Cents Savings Bank | First Mortgage | $ 3,014,383.04 | 1st lien |
| American Express Bank FSB | Attachment | $ 333,000.00 | 2nd lien |
| Sovereign Bank, NA | Execution | $ 1,181,320.36 | 3rd lien |
| Lease Corporation of America | Execution | $ 54,697.58 | 4th lien |
| Direct Capital Corporation | Execution | $ 53,778.83 | 5th lien |
| Town of West Newbury | Real Estate Taxes | $ 31,003.07 | Yes |
| Massachusetts Department of Revenue | Tax Lien | $ 15,819.09 | Yes* |

Total: $   4,684,001.97

* The recorded tax lien against the Property, by Massachusetts Department of Revenue,

was issued against Co-Borrower, Louis P. DeCaprio.

10.     According to the Bank's appraisal (prepared by Richard Carter of North Wind Appraisal)

dated March 1, 2013, the fair market value of the Property is $1,550,000.00.  The

liquidation value of the property would be less than that.  A copy of the Appraisal is

attached herewith as Exhibit C.

11.     The Debtor and Co-Borrowers have no equity in the Property based upon the amount

presently owed to the Bank and others of approximately $4,684,001.97 and the fair

market value of the Property of $1,550,000.00, as set forth above.

12.     There is no other collateral securing the Debtor's obligation to the Bank.

13.     Section 362(d) of the Bankruptcy Code states, in relevant part:

>     On request of a party in interest and after notice and a hearing, the
>     court shall grant relief from the stay provided under subsection (a)
>     of this section, such as by terminating, annulling, modifying or
>     conditioning such stay
>
>     (1)     for cause, including the lack of adequate protection of an
>     interest in property of such party in interest;
>
>     (2)     with respect to a stay of an act against property under
>     subsection (a) of this section, if -

  i.   the debtor does not have an equity in such property; and

  ii.   such property is not necessary for an effective
     reorganization 11 U.S.C. § 362(d).

14. An absence of a debtor's equity in collateral without some other form of adequate

protection can constitute a basis for granting relief from the automatic stay "for cause"

under § 362(d)(1). In re Ledis, 259 B.R. 472, 476 (Bankr. D. Mass. 2001). In this case,

termination of the automatic stay is proper pursuant to 11 U.S.C. § 362(d)(1) on the

grounds that Bank lacks adequate protection of its interest in the Property. The

obligations of the Debtor to his secured creditors exceed the fair market value of the

Property and the Debtor has no equity in the Property. As stated above, the fair market

value of the Property is $1,550,000.00. The outstanding first mortgage to the Bank

exceeds the fair market value of the Property by $1,464,383.04 and the Property is over-

encumbered in the amount of $3,134,001.97.

15. In addition, the Debtor has not made any full mortgage payments to the Bank since July 6,

2011 and is currently twenty-four (24) months in arrears.

16. There is no other collateral securing the Debtor's obligations to Bank and Bank's interest

in the Property is not adequately protected.

17. In the alternative, Bank is entitled to relief from the automatic stay pursuant to

§362(d)(2). As stated above, the obligations of Debtor to his secured creditors exceed the

fair market value of the Property and there is no equity in the Property. In addition,

Debtor's case is a liquidation under Chapter 7 of the Bankruptcy Code and, therefore, the

Property is not necessary for the Debtor's reorganization.

18.   The other two co-owners of the property, Scott Stanwood and Louis P. DeCaprio, have

       successively filed Chapter 7 and have had the property released from the automatic stay in

       each of their cases. The first of the three owners, Scott Stanwood, filed bankruptcy on

       January 28, 2013. After the order from relief for stay was granted in that case, the second

       co-owner, Louis P. DeCaprio, filed bankruptcy on April 27, 2013. An Order granting the

       relief from stay was issued in that case. Accordingly, due to the significant delay since the

       original filing of Scott Stanwood on January 28, 2013, the Bank would request the Court

       to waive the fourteen-day waiting period pursuant to Fed. R. Bankr. P. 4001(a)(3).

19.   Alternative proposed Orders are attached hereto as Exhibit D-1 and D-2.

20.   In accordance with Local Rule 9013-1(b), undersigned Bank counsel has left a message

       for Debtor's counsel regarding the filing of this Motion but has not able to ascertain

       whether the Debtor will oppose the Motion.


WHEREFORE, the Bank respectfully requests that the Court:


(1)   Grant the Newburyport Five Cents Savings Bank relief from automatic stay pursuant to

       11 U.S.C. §362(d)(1) and §362(d)(2) for the purpose of exercising any and all of its rights

       and remedies under the above-mentioned Note and Mortgage including without

       limitation:

                   i.    Taking possession of the Property and foreclosing its Mortgage;

                   ii.   Taking such action as may be necessary to evict the Debtor and any other

                         occupants from the Property; and

(2)     Grant the Newburyport Five Cents Bank's request to waive the fourteen-day stay of the

Order pursuant to Fed. R. Bankr. P. 4001(a)(3).

(3)     Order such further relief as this Court deems just and proper.

In accordance with Local Rules, the Newburyport Five Cents Savings Bank requests that its

Motion be allowed without a hearing unless an objection is timely filed.


                                        Secured Creditor,
                                        Newburyport Five Cents Savings Bank
                                        By its attorney,


Dated: July 19, 2013                    /s/  James T. Connolly, Esq.
                                        James T. Connolly (BBO#095120)
                                        Connolly & Connolly
                                        P.O. Box 332, 51 Green Street
                                        Newburyport, MA  01950
                                        Tel:  (978) 462-2251
                                        Email:  jc.connolly@verizon.net


                            –  6  –

EXHIBIT A

2003112000110 Bk:22095 Pg:273
11/20/2003 09:34:08 MTG Pg 1/7

SEND TAX NOTICES TO:
Newburyport Five Cents Savings Bank
P.O. Box 350
63 State Street
Newburyport, MA  01950

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

## MORTGAGE

THIS MORTGAGE dated November 15, 2003, is made and executed between Louis P. DeCaprio, Todd M. Stanwood and Scott Stanwood, whose address is 4 Ilisley Hill Road, West Newbury, MA  01985 (referred to below as "Grantor") and Newburyport Five Cents Savings Bank, whose address is P.O. Box 350, 63 State Street, Newburyport, MA  01950 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor grants to Lender with MORTGAGE COVENANTS all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Essex County, Commonwealth of Massachusetts:

See the exhibit or other description document which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as  4 Ilisley Hill Road, West Newbury, MA  01985.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain. Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. In addition, Grantor represents and warrants that Grantor's Property do not contain urea formaldehyde foam insulation or urea formaldehyde resin in violation of any Massachusetts state laws. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

Nuisance, Waste. Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

Removal of Improvements. Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

Lender's Right to Enter. Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

Compliance with Governmental Requirements. Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

Duty to Protect. Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

TAXES AND LIENS. The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

Payment. Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to

MORTGAGE
(Continued)

2003112000110 Bk:22095 Pg:274
11/20/2003 09:34:06 MTG Pg 2/7

the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the

MORTGAGE
(Continued)

20031120001I0 Bk:22095 Pg:27
11/20/2003 09:34:00 MTG Pg 3/7

same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided bnio unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Lien section and deposits with Lender cash o a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, an Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested b Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Mortgage in the rea property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies o reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting o continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upo default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient t Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the exten permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interes granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of thi Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness, including without limitation all future advances, when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** At Lender's option, Grantor will be in default under this Mortgage if any of the following happen:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Break Other Promises.** Grantor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Mortgage or in any agreement related to this Mortgage.

**False Statements.** Any representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of Grantor's property in which Lender has a lien. This includes taking of, garnishing of or levying on Grantor's accounts with Lender. However, if Grantor disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Grantor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Statutory Condition.** Breach of the Statutory Condition.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If such a failure is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured (and no Event of Default will have occurred) if Grantor, after Lender sends written notice demanding cure of such failure: (a) cures the failure within thirty (30) days; or (b) if the cure requires more than thirty (30) days, immediately initiates steps sufficient to cure the failure and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** This Mortgage is upon the STATUTORY CONDITION for any breach of which Lender, the mortgagee, shall have the STATUTORY POWER OF SALE. In addition, upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**Foreclosure.** Lender may invoke the STATUTORY POWER OF SALE, in which case Lender shall mail a copy of a notice of sale to Grantor and to any other person required by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in

**MORTGAGE**
(Continued)

2003112000110 Bk:22095 Pg:275
11/20/2003 09:34:08 MTG Pg 4/7

response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender will give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least fourteen (14) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Mortgage, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any person may change his or her address for notices under this Mortgage by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**WAIVERS AND MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** What is written in this Mortgage and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Mortgage. To be effective, any change or amendment to this Mortgage must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by and interpreted in accordance with federal law and the laws of the Commonwealth of Massachusetts. This Mortgage has been accepted by Lender in the Commonwealth of Massachusetts.

**Joint and Several Liability.** All obligations of Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Mortgage unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Mortgage. Grantor also understands that just because Lender consents to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Mortgage is not valid or should not be enforced, that fact by itself will not mean that the rest of this Mortgage will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Mortgage even if a provision of this Mortgage may be found to be invalid or unenforceable.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Release of Estate of Homestead.** Grantor hereby releases any estate of homestead as to all Indebtedness secured by this Mortgage.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage:

**Borrower.** The word "Borrower" means Louis P. DeCaprio, Todd M. Stanwood and Scott Stanwood and includes all co-signers and co-makers signing the Note.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Louis P. DeCaprio, Todd M. Stanwood and Scott Stanwood.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including

MORTGAGE
(Continued)

2003112000110 Bk:22095 Pg:277
11/20/2003 09:34:00  MTG Pg 6/7

without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means Newburyport Five Cents Savings Bank, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated November 15, 2003, **in the original principal amount of $3,100,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of this Mortgage is May 1, 2034. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.

THIS MORTGAGE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MORTGAGE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

X_____ (Seal)
Louis P. DeCaprio

X_____ (Seal)
Scott Stanwood

X_____ (Seal)
Todd M. Stanwood

Signed, acknowledged and delivered in the presence of:

X_____
Witness

X_____
Witness

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH OF MASSACHUSETTS                )
                                             ) SS
COUNTY OF ___Essex___                        )

On this day before me, the undersigned Notary Public, personally appeared Louis P. DeCaprio; Todd M. Stanwood; and Scott Stanwood, to me known to be the individuals described in and who executed the Mortgage, and acknowledged that they signed the Mortgage as their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ___15___ day of ___November 2003___, 20____.

By_____          Residing at _____

Notary Public in and for the State of ___MA___      My commission expires ___11-3-2006___

[Affix Notarial Seal]

LASER PRO Lending, Ver. 5.22.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2003.  All Rights Reserved.  - MA  D:\CENDER\CFI\LPL\G03.FC  PR-20  PR-20

2003112000110 Bk:22095 Pg:2
11/20/2003 09:34:00   MTG Pg 6/7

## NEWBURYPORT FIVE CENTS SAVINGS BANK
Newburyport, Massachusetts 01950

### INDEXED ADJUSTABLE RATE MORTGAGE RIDER

This Indexed Adjustable Rate Mortgage Rider (Rider) is made this___15th___day of___November 2003___, and is incorporated into and shall be deemed to amend and supplement a Mortgage of even-date herewith, given by the undersigned (Borrower) to secure Borrower's Note to___Newburyport Five Cents Savings Bank___ (Lender) and covering the property described in said security instrument and located at_____
___4 Ilsley Hill Road West Newbury, MA___

In addition to the covenants and agreements made in said security instrument, Borrower and Lender further covenant and agree as follows:

Any provisions of said security instrument or other instruments executed in connection with said indebtedness which are inconsistent with the provisions of this Rider, including but not limited to the interest rate, monthly payment, notice to Borrower and repayment, are hereby amended or negated to the extent necessary to conform such instruments to the provisions of this Rider.

This Rider provides, in part, for an Initial Interest Period and subsequent Interest Periods which shall occur at consecutive___12___month intervals until the maturity date of said security instrument. The Initial Interest Period is that period of time from the execution of said Mortgage to and including one day before___59 mos. from 1st due dat___ Subsequent Interest Periods are those periods of time beginning on the first day next following the end of the immediately preceding Interest Period and ending___12___months later.

The final Interest Period, which may be shorter than preceding Interest Periods, shall be that period of time beginning on the first day next following the end of the immediately preceding Interest Period and ending on the maturity day of said Note.

The loan must be repaid in equal monthly installments of principal and interest during each Interest Period in an amount at least sufficient to amortize a loan with the same principal and at the same interest rate over the remaining term of said Note.

The interest rate variation at each Adjustment Date shall be determined by adjusting the interest rate, up or down, to a rate equal to the current index rate as most recently published___60___days prior to the Adjustment Date plus___3.250___percentage points (___3.250___%), rounded to the nearest one-eighth of one percentage point.

☐ The "Contract Interest Rate, Purchase of Previously Occupied Homes, National Average for All Major Types of Lenders" published by the Federal Home Loan Bank Board.

☒ The ☒weekly ☐monthly average yield on United States Treasury securities adjusted to a constant maturity of ___one___years as made available by the Federal Reserve Board.

☐ _____.

This sentence ☒does ☐does not apply: The interest rate for the period after any Adjustment Date shall vary, up or down, from the interest rate of the immediately preceding interest rate by not more than___2.00___percentage points.

This sentence ☐does ☒does not apply: The initial rate has been discounted by___% per annum from the rate that would have been in effect if the margin had been added to the index and the limits on the interest rate changes disclosed in the immediately preceding sentence shall be increased by the amount of the discount on the Initial Adjustment Date.

This sentence ☒does ☐does not apply: The interest rate will not vary, up or down, more than___6.00___percentage points from the initial rate of interest during the term of this Note.

Interest rate decreases from the previous Interest Period are mandatory. Interest rate increases from the previous Interest Period are at the option of the Lender.

At the option of the Note holder, said Note shall become immediately due and payable without notice or demand upon the transfer of title, or the beneficial interest therein, of all or any part of the property described in this Mortgage.

This Mortgage shall secure any and all renewals, modifications or extensions of the whole or any part of the indebtedness secured, however evidenced, with interest as hereinabove determined or at such other lawful rate as may be agreed upon from time to time, and any such renewals, modifications, extensions, or alteration of the terms or rate of interest shall not impair in any manner the validity or priority of this Mortgage.

IN WITNESS WHEREOF, Borrower has executed this Indexed Adjustable Rate Mortgage Rider.

_____   _____
Borrower                    Borrower
Essex                       Newburyport
_____, ss.      _____, Massachusetts

On this___15___day of___November 2003___, 19___, before me personally appeared
___Louis P. DeCaprio, Todd M. Stanwood, Scott Stanwood___, to me known to be the person(s) who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.
                    11-3-2006
My Commission Expires:_____        _____
                                                        Notary Public

B707                                                    ©1986 Bankers Group Purchasing Form 707 (Rev. 3/86)

Exhibit A

2003112000110 Bk:22095 Pg:279
11/20/2003 09:34:00 MTG Pg 7/7

the land with the buildings thereon situated in West Newbury, Massachusetts, being Lot 1 on "Plan of Land in West Newbury, Massachusetts as surveyed for George E. Tudor, Sept. 1979, Cammett and Kutensky Engineering, Inc." recorded with Essex South District Registry of Deeds in Plan Book 156, Plan 34 and more particularly bounded and described as follows:

NORTHEASTERLY by Illsley Hill Road 14.70 feet and 185.30 feet, respectively;
SOUTHEASTERLY by land now or formerly of Burr, 404.75 feet;
SOUTHWESTERLY by land now or formerly of Walsh, 302.67 feet; again
SOUTHEASTERLY by land now or formerly of Walsh, 301.47 feet and 248.11 feet, respectively; again
SOUTHWESTERLY by land now or formerly of Rooney, 28.43 feet, 188.70 feet and 28.82 feet, respectively;
NORTHWESTERLY by land now or formerly of Rooney, 145 feet;
NORTHERLY by Lot 2 and Right of Way, 439.49 feet, 48.40 feet and 100.90 feet, respectively; again
NORTHEASTERLY by said Lot 2, 332 feet; and again
NORTHWESTERLY by said Lot 2, 190 feet.

Being all said measurements more or less, or however otherwise bounded and described being the premises shown as Lot 1 on said plan.

Containing 5.05 acres, more or less, of land according to said plan.

Subject to and together with any and all easements, restrictions and conditions or record insofar as now in force and applicable.

Meaning and intending to mortgage the property conveyed to the Grantors as described in a deed recorded with the Essex South District Registry of Deeds in book 16149 page 513

EXHIBIT B

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,100,000.00 | 11-15-2003 | 05-01-2034 | | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

Borrower:   Louis P. DeCaprio, Todd M. Stanwood and Scott        Lender:    Newburyport Five Cents Savings Bank
Stanwood                                                                   P.O. Box 350
4 Ilisley Hill Road                                                        63 State Street
West Newbury, MA 01985                                                     Newburyport, MA 01950

**Principal Amount:  $3,100,000.00**            **Initial Rate:  5.875%**            **Date of Note:  November 15, 2003**

PROMISE TO PAY. I ("Borrower") jointly and severally promise to pay to Newburyport Five Cents Savings Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Million One Hundred Thousand & 00/100 Dollars ($3,100,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance. The interest rate will not increase above 10.875%.

PAYMENT. Subject to any payment changes resulting from changes in the Index, I will pay this loan in accordance with the following payment schedule: 6 monthly consecutive interest payments, beginning December 1, 2003, with interest calculated on the unpaid principal balances at an interest rate of 5.875% per annum; 54 monthly consecutive principal and interest payments in the initial amount of $16,405.48 each, beginning June 1, 2004, with interest calculated on the unpaid principal balance at an interest rate of 4.875% per annum; 305 monthly consecutive principal and interest payments in the initial amount of $16,814.89 each, beginning November 1, 2008, with interest calculated on the unpaid principal balances at an interest rate based on the Weekly Average Yield on US Treasury Securities adjusted to the constant maturity of 1 year (currently 1.250%), plus a margin of 3.250 percentage points, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 5.000%; and one principal and interest payment of $16,813.99 on May 1, 2034, with interest calculated on the unpaid principal balances at an interest rate based on the Weekly Average Yield on US Treasury Securities adjusted to the constant maturity of 1 year (currently 1.250%), plus a margin of 3.250 percentage points, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 5.000%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note during the initial interest only payment period is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Interest on this Note during the permanent loan phase is computed on a 30/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days is calculated on the basis of the actual days to the next full month and a 360-day year. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

VARIABLE INTEREST RATE. The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Weekly Average Yield on US Treasury Securities adjusted to the constant maturity of 1 year (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to me. Lender will tell me the current Index rate upon my request. The interest rate change will not occur more often than each year. The interest rate adjustment at each adjustment date shall be determined by adjusting the interest rate, up or down, to a rate not exceeding the index rate most recently published 60 days prior to the adjustment date plus three and one-quarter percentage points (3.250%) rounded to the nearest one-eighth of one percentage point (.125%). I understand that Lender may make loans based on other rates as well. The Index currently is 1.250% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. Notwithstanding the foregoing, the variable interest rate or rates provided for in this Note will be subject to the following minimum and maximum rates. NOTICE: Under no circumstances will the interest rate on this Note be less than 5.000% per annum or more than the lesser of 10.875% per annum or the maximum rate allowed by applicable law. Notwithstanding the above provisions, the maximum increase or decrease in the interest rate at any one time on this loan will not exceed 2.000 percentage points. Unless waived by Lender, any increase in the interest rate will increase the amounts of my payments during the permanent loan phase.

PREPAYMENT PENALTY. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: If the loan is prepaid wholly (1) within one year of closing, borrower must pay three months interest or the balance of the first year's interest, whichever is less, or (2) within three years for refinancing with another lender, borrower must pay three months interest. Except for the foregoing, I may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Newburyport Five Cents Savings Bank, P.O. Box 350 Newburyport, MA  01950.

LATE CHARGE. If a payment is 16 days or more late, I will be charged 3.000% of the principal and interest overdue.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the total sum due under this Note will bear interest from the date of acceleration or maturity at the variable interest rate on this Note. The interest rate will not exceed the maximum rate permitted by applicable law.

DEFAULT. I will be in default under this Note if any of the following happen:

Payment Default. I fail to make any payment when due under this Note.

Break Other Promises. I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

False Statements. Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

Death or Insolvency. Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

Taking of the Property. Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

Defective Collateralization. This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

Collateral Damage or Loss. Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party or any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

Insecurity. Lender in good faith believes itself insecure.

Cure Provisions. If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured (and no event of default will have occurred) if I, after receiving written notice from Lender demanding cure of such default: (1) cure the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

## PROMISSORY NOTE
### (Continued)

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by and interpreted in accordance with federal law and the laws of the Commonwealth of Massachusetts. This Note has been accepted by Lender in the Commonwealth of Massachusetts.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** I acknowledge this Note is secured by the following collateral described in the security instrument listed herein, all the terms and conditions of which are hereby incorporated and made a part of this Note: a Mortgage to Lender on real property located in Essex County, Commonwealth of Massachusetts.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, I am not entitled to further loan advances. I agree to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of my accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Newburyport Five Cents Savings Bank P.O. Box 390 Newburyport, MA 01950

**WAIVERS AND GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. To the extent permitted by applicable law, all such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**PRIOR TO SIGNING THIS NOTE, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS AND THE NOTICE TO COSIGNER SET FORTH BELOW. I, AND EACH OF US, AGREE TO THE TERMS OF THE NOTE.**

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

**THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**BORROWER:**

X _____ {Seal}
Louis R. DaChello

X _____ {Seal}      X _____ {Seal}
Scott Stanwood                            Todd M. Stanwood

Signed, acknowledged and delivered in the presence of:

X _____
Witness

X _____
Witness

---

## NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The Lender can collect this debt from you without first trying to collect from the borrower. The Lender can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of YOUR credit record.

This notice is not the contract that makes you liable for the debt.

LASER PRO Lending, Ver. 5.31.20.003  Copr. Harland Financial Solutions, Inc. 1997, 2005. All Rights Reserved. - MA   C:\CFI\CFILPL\E20C.FC   TR-7346  PR-29

EXHIBIT C



## APPRAISAL OF REAL PROPERTY

### LOCATED AT:
4 Illsley Hill Road
Essex County Reg of Deeds Bk 16149 Pg 513
West Newbury, MA 01985

### FOR:
Newburyport 5 Cents Savings
63 State Street
Newburyport, MA  01950

### AS OF:
03-01-2013

### BY:
Richard Carter, SRA
North Wind Appraisal
12 Waterboro Road
Alfred, ME 04002
MACG #1250
(Expires 02-22-14)

Main File No. RIC13030637| Page #2



North Wind Appraisal
12 Waterboro Road
Alfred, ME 04002
03-06-2013


Ms. Kim Foulkes,


Newburyport 5 Cents Savings
63 State Street
Newburyport, MA 01950


Re: Property: 4 Illsley Hill Road
        West Newbury, MA 01985
    Borrower: L. DeCaprio, S. Stanwood & T. Stanwood
    File No.:


In accordance with your request, I have appraised the above referenced property.  The
report of that appraisal is attached.

The purpose of this appraisal is to estimate the market value of the property
described in this appraisal report, as improved, in unencumbered fee simple title of
ownership.

This report is based on a physical analysis of the site and improvements, a locational
analysis of the neighborhood and city, and an economic analysis of the market for
properties such as the subject.  The appraisal was developed and the report was
prepared in accordance with the Uniform Standards of Professional Appraisal Practice.
The value conclusions reported are as of the effective date stated in the body of the
report and contingent upon the certification and limiting conditions attached.

It has been a pleasure to assist you.  Please do not hesitate to contact me if I can
be of additional service to you.


Sincerely,


Richard Carter, SRA
MACG #1250
(Expires 02-22-14)

Main File No. RIC130330637 Page #3

## SUMMARY OF SALIENT FEATURES

| SUBJECT INFORMATION | | |
|---|---|---|
| | Subject Address | 4 Illsley Hill Road |
| | Legal Description | Essex County Reg of Deeds Bk 16149 Pg 513 |
| | City | West Newbury |
| | County | Essex |
| | State | MA |
| | Zip Code | 01985 |
| | Census Tract | 2631.00 |
| | Map Reference | 37764 |

| SALES PRICE | | |
|---|---|---|
| | Sale Price | $ N/A |
| | Date of Sale | N/A |

| CLIENT | | |
|---|---|---|
| | Borrower | L. DeCaprio, S. Stanwood & T. Stanwood |
| | Lender/Client | Newburyport 5 Cents Savings |

| DESCRIPTION OF IMPROVEMENTS | | |
|---|---|---|
| | Size (Square Feet) | 7,480 |
| | Price per Square Foot | $ |
| | Location | Good |
| | Age | 28/11 |
| | Condition | Very Good |
| | Total Rooms | 15 |
| | Bedrooms | 4 |
| | Baths | 6 |

| APPRAISER | | |
|---|---|---|
| | Appraiser | Richard Carter, SRA |
| | Date of Appraised Value | 03-01-2013 |

| VALUE | | |
|---|---|---|
| | Final Estimate of Value | $ 1,550,000 |

North Wind Appraisal (207) 490-1940

Main File No. RIC130306371 Page #4

## FIRREA / USPAP ADDENDUM

| | |
|---|---|
| Borrower | L. DeCaprio, S. Stanwood & T. Stanwood |
| Property Address | 4 Illsley Hill Road |
| City | West Newbury | County Essex | State MA | Zip Code 01985 |
| Lender/Client | Newburyport 5 Cents Savings |

**Purpose**

The purpose of the appraisal is to estimate the market value of the subject property as of the date of inspection which was March 1, 2013.

**Scope**

Appraisal work completed for the assignment includes the following:
I have examined both the exterior and interior of the subject dwelling to note its overall size, construction quality, and condition.  I have walked portions of the subject site.  I have conferred with municipal officials to learn of the assessment and lot size.  I have consulted with with West Newbury's Assessor, real estate brokers in the area, and MLS to learn of sales of comparable dwellings. I used both the Direct Sales Comparison Approach and Cost Approach to estimate value.

**Intended Use / Intended User**

The appraisal is prepared for the Newburyport Five Cents Savings Bank to prepare for possible foreclosure activities.

**History of Property**

Current listing information:  Please See Addendum

Prior sale:  The subject property has not sold in the past three years.

**Exposure Time / Marketing Time**

Current marketing time in the area is considered to be three to six months.

**Personal (non-realty) Transfers**

None

**Additional Comments**

The report enclosed herewith has been digitally signed.  Please note that it is my signature, is secure with no one else having access to it.

I appraised the subject property for the Newburyport Five Cents Savings Bank on 07-13-2009 at which point I entered the interior.  I also did an appraisal for the Newburyport Five Cents Savings Bank on 03-07-2012 based on an exterior inspection only.

**Certification Supplement**

1. This appraisal assignment was not based on a requested minimum valuation, a specific valuation, or an approval of a loan.
2. My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result or the occurrence of a subsequent event.

Appraiser(s): Richard Carter, SRA

Effective date / Report date:      03-01-2013/03-06-2013

Supervisory Appraiser(s):

Effective date / Report date:

RICO8070981
RIC013030637] Page #5

## Market Conditions Addendum to the Appraisal Report

Main File No. RIC13030637] Page #5
File No. RIC13030637

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

**Property Address** 4 Ilisley Hill Road   **City** West Newbury   **State** MA   **ZIP Code** 01985
**Borrower** L. DeCaprio, S. Stanwood & T. Stanwood

Instructions: The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 1 | 1 | 1 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | 0.17 | 0.33 | 0.33 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Total # of Comparable Active Listings | 5 | 4 | 3 | ☒ Declining | ☒ Stable | ☐ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | | | 9.1 | ☒ Declining | ☒ Stable | ☐ Increasing |

| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Median Comparable Sale Price | 1,075,000 | 1,375,000 | 1,150,000 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 247 | 37 | 1,621 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Comparable List Price | | | 1,500,000 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | | | 167 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | .83 | .92 | .92 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☐ Yes | ☒ No | | ☐ Declining | ☒ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).   Market includes the Towns of Newbury and West Newbury.

Are foreclosure sales (REO sales) a factor in the market? ☐ Yes ☒ No   If yes, explain (including the trends in listings and sales of foreclosed properties).
Foreclosures are not common in this end of the market.

Cite data sources for above information.   Massachusetts MLS system.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
Data is scarce making it difficult to draw any meaningful conclusions.

**If the subject is a unit in a condominium or cooperative project, complete the following:**   Project Name:

| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project? ☐ Yes ☐ No   If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| Signature | Signature |
|---|---|
| Appraiser Name Richard Carter, SRA | Supervisory Appraiser Name |
| Company Name North Wind Appraisal | Company Name |
| Company Address 12 Waterboro Rd, Alfred, ME 04002 | Company Address |
| State License/Certification # 1250   State MA | State License/Certification #   State |
| Email Address rcarter@gwi.net | Email Address |

Freddie Mac Form 71  March 2009       Page 1 of 1       Fannie Mae Form 1004MC  March 2009

Form 1004MC2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

North Wind Appraisal (207) 490-1940

Main File No. RIC13030637 Page #6

**Summary Appraisal Report**

# Uniform Residential Appraisal Report

RIC08070981
File # RIC13030637

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | | | |
|---|---|---|---|---|---|
| Property Address 4 Ilsley Hill Road | | City West Newbury | State MA | Zip Code 01985 | |

Borrower L. DeCaprio,S. Stanwood & T. Stanwood  Owner of Public Record L. DeCaprio, S. Stanwood & T. S  County Essex

Legal Description Essex County Reg of Deeds Bk 16149 Pg 513

| Assessor's Parcel # M-7, P-14C | Tax Year 2013 | R.E. Taxes $ 22,416.98 |
|---|---|---|

| Neighborhood Name Indian Hill Reservoir | Map Reference 37764 | Census Tract 2631.00 |
|---|---|---|

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ None    ☐ PUD  HOA $ ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Evaluation of Collateral

Lender/Client Newburyport 5 Cents Savings    Address 63 State Street, Newburyport, MA 01950

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☒ Yes ☐ No

Report data source(s) used, offering price(s), and date(s). Please See Addendum

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. N/A

Contract Price $ N/A    Date of Contract N/A    Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s) N/A

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.    N/A    N/A

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| **Neighborhood Characteristics** | | **One-Unit Housing Trends** | | **One-Unit Housing** | **Present Land Use %** | |
|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☒ Increasing ☐ Stable ☐ Declining | PRICE $(000) | AGE (yrs) | One-Unit 80 % | |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | Low 10 | | 2-4 Unit % | |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☐ 3-6 mths ☒ Over 6 mths | 250 Low 10 | | Multi-Family % | |
| | | 1,500 High 315 | | Commercial % | |
| Neighborhood Boundaries    Please See Addendum | | 480 Pred. 155 | | Other 20 % | |

Neighborhood Description    Please See Addendum

Market Conditions (including support for the above conclusions)    Please See Addendum

| Dimensions Refer to Map and Deed | Area 5.05 Acres | Shape Irregular | View Reservoir/Nbhd |
|---|---|---|---|

Specific Zoning Classification Residential A    Zoning Description 80,000/200 Feet

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☐ | ☒ Well | Street Paved Asphalt | ☒ | ☐ |
| Gas | ☐ | ☒ Propane | Sanitary Sewer | ☐ | ☒ Septic | Alley | ☐ | ☐ |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone X    FEMA Map # 25009C0114F    FEMA Map Date 07/03/2012

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe Please See Addendum

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No  If Yes, describe

Please See Addendum

| **General Description** | | **Foundation** | | **Exterior Description** materials/condition | | **Interior** materials/condition | |
|---|---|---|---|---|---|---|---|
| Units ☐ One ☒ One with Accessory Unit | ☐ Concrete Slab ☐ Crawl Space | Foundation Walls Poured Concrete | Floors HW,WW,Mar/Vg | | | | |
| # of Stories 2.5 | ☒ Full Basement ☐ Partial Basement | Exterior Walls Wd Clapbrd | Walls Plaster/Vg | | | | |
| Type ☒ Det. ☐ Att. ☐ S-Det/End Unit | Basement Area 4,273 sq.ft. | Roof Surface As Sh/Rubb/Slat | Trim/Finish Custom/Vg | | | | |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish 10 % | Gutters & Downspouts None | Bath Floor Marble/Vg | | | | |
| Design (Style) Cont Colon | ☒ Outside Entry/Exit ☐ Sump Pump | Window Type Dbl Hung,Custom | Bath Wainscot Marble/Vg | | | | |
| Year Built 1985/2002 | Evidence of ☐ Infestation | Storm Sash/Insulated Thermals | Car Storage ☐ None | | | | |
| Effective Age (Yrs) 8 | ☐ Dampness ☐ Settlement | Screens Yes | ☒ Driveway # of Cars Ample | | | | |
| Attic ☒ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities | Driveway Surface Crush Stone | | | | |
| ☐ Drop Stair ☐ Stairs | ☐ Other Fuel Oil/Gas | ☒ Woodstove(s) # 5 ☐ Fence | ☒ Garage # of Cars 4 | | | | |
| ☐ Floor ☐ Scuttle | Cooling ☒ Central Air Conditioning | ☒ Fireplace(s) # 5 ☐ Porch | ☐ Carport # of Cars | | | | |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☒ Patio/Deck ☐ Other | ☐ Att. ☒ Det. ☐ Built-In | | | | |
| | | ☐ Pool | | | | | |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☒ Washer/Dryer ☒ Other (describe) See Addendum

Finished area above grade contains: 15 Rooms 4 Bedrooms 6 Bath(s) 7,480 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). Please See Addendum

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). Please See Addendum

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No  If Yes, describe

Please See Addendum

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No  If No, describe

| Freddie Mac Form 70 March 2005 | Page 1 of 6 | Fannie Mae Form 1004 March 2005 |
|---|---|---|

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Main File No. RIC13030637 Page #7

RIC08070981
File # RIC13030637

# Uniform Residential Appraisal Report

There are | 1 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 1,300,000 to $ 1,500,000 .
There are | 1 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 1,300,000 to $ 1,500,000 .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 4 Illsley Hill Road | 78 Rogers Street | | 5 Kimball Road | | 251 Middle Road | |
| | West Newbury, MA 01985 | West Newbury, MA 01985 | | West Newbury, MA 01985 | | Byfield | |
| Proximity to Subject | | 1.89 miles NE | | 1.13 miles NW | | 3.24 miles SE | |
| Sale Price | $ | $ 1,375,000 | | $ 1,150,000 | | $ 1,075,000 | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 252.48 sq.ft. | | $ 306.10 sq.ft. | | $ 214.40 sq.ft. | |
| Data Source(s) | | MLS # 71427164 | | MLS # 70782336 | | Appraiser's Files | |
| Verification Source(s) | | Assessor | | Assessor | | Assessor | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Cash | | Conventional | | Conventional | |
| Concessions | | None Known | | None Known | | None Known | |
| Date of Sale/Time | | 10-02-2012 | | 01-31-2013 | | 08-09-2012 | |
| Location | Good | Very Good | -100,000 | Good | | Good | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 5.05 Acres | 2.61 Acres | +15,000 | 7.71 Acres | -15,000 | 2.3 Acres | +15,000 |
| View | Reservoir | Reservoir | | Pastoral | | Parker River | |
| Design (Style) | Cont Colon | Cont Colon | | Cont Colon | | Cont Cape | |
| Quality of Construction | Very Good | Very Good | | Very Good | | Very Good | |
| Actual Age | 28/11 | 8 | | 8 | | 47/7 Eff 10 | |
| Condition | Very Good | Very Good | | Very Good | | Very Good | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 15 4 6 | 11 4 3.5 | +50,000 | 11 4 2.5 | +70,000 | 10 4 5 | +20,000 |
| Gross Living Area | 7,480 sq.ft. | 5,446 sq.ft. | +203,400 | 3,757 sq.ft. | +372,300 | 5,014 sq.ft. | +246,600 |
| Basement & Finished | Full Bsmt | Full Unfin | | Full Bsmt | | Part Bsmt | +20,000 |
| Rooms Below Grade | 1 Rm | None | +2,000 | 2 Rms/Bath | -22,000 | None | +2,000 |
| Functional Utility | Very Good | Very Good | | Very Good | | Good | |
| Heating/Cooling | FHW,FHA/Cen | FHW/Central | | FHA/Central | | FHW/Rad/Cent | |
| Energy Efficient Items | Thermals | Thermals | | Thermals | | Thermals | |
| Garage/Carport | 2 Att | 3 Att | -20,000 | 3 Att | -20,000 | 2 Car BI | |
| Porch/Patio/Deck | 2 Prch,Bal | 3 Prch,Balc | -5,000 | 4 Prch | -5,000 | Prch | +10,000 |
| Other | 5 Fps | 2 Fps | +15,000 | 5 Fps | | 2 Fps | +15,000 |
| Other | Pool/Shed | Shed | +10,000 | None | +11,000 | Pool/Shed | |
| Other | 2 Detached | None | +10,000 | Barn | -15,000 | Indoor Pool | +10,000 |
| Net Adjustment (Total) | | ☒ + ☐ - $ 180,400 | | ☒ + ☐ - $ 376,300 | | ☒ + ☐ - $ 338,600 | |
| Adjusted Sale Price | | Net Adj. 13.1 % | | Net Adj. 32.7 % | | Net Adj. 31.5 % | |
| of Comparables | | Gross Adj. 31.3 % $ 1,555,400 | | Gross Adj. 46.1 % $ 1,526,300 | | Gross Adj. 31.5 % $ 1,413,600 | |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) Assessor,Registry of Deeds
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) Assessor, Registry of Deeds
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | N/A | N/A | N/A | N/A |
| Price of Prior Sale/Transfer | N/A | N/A | N/A | N/A |
| Data Source(s) | N/A | N/A | N/A | N/A |
| Effective Date of Data Source(s) | 03-06-2013 | 03-06-2013 | 03-06-2013 | 03-06-2013 |

Analysis of prior sale or transfer history of the subject property and comparable sales  The subject has not sold in the past three years.
None of the sales have sold twice in a one year period.

Summary of Sales Comparison Approach  Please See Addendum

Indicated Value by Sales Comparison Approach $ 1,550,000

Indicated Value by: Sales Comparison Approach $ 1,550,000  Cost Approach (if developed) $ 2,328,600  Income Approach (if developed) $
Please See Addendum

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 1,550,000 , as of 03-01-2013 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005     Page 2 of 6     Fannie Mae Form 1004 March 2005

Main File No. RIC13030637 Page # 6

RIC08070981

## Uniform Residential Appraisal Report
File # RIC13030637

None

**ADDITIONAL COMMENTS**

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)      Please See Addendum

| | | | | |
|---|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ | 275,000 |
| Source of cost data Marshall & Swift's Residential Cost | DWELLING | 7,480 Sq.Ft.@$ 178.25 | =$ | 1,333,310 |
| Quality rating from cost service Ex-13 Effective date of cost data 03-2013 | | 4,273 Sq.Ft.@$ 33.34 | =$ | 142,462 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Fi Bm, Pool, Prchs, Fps, Decks | | =$ | 226,500 |
| The regional multiplier is .99 while the local | Garage/Carport 1,920 Sq.Ft.@$ 47.00 | | =$ | 90,240 |
| multiplier for the Town of West Newbury is 1.22. | Total Estimate of Cost-New | | =$ | 1,792,512 |
| Depreciation is based on the age/life method. | Less  Physical  Functional  External | | | |
| | Depreciation  238,942 | | =$( | 238,942) |
| | Depreciated Cost of Improvements | | =$ | 1,553,570 |
| | "As-is" Value of Site Improvements | | =$ | 500,000 |
| Estimated Remaining Economic Life (HUD and VA only)  52 Years | INDICATED VALUE BY COST APPROACH | | =$ | 2,328,600 |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

| | | |
|---|---|---|
| Estimated Monthly Market Rent $ | X Gross Rent Multiplier = $ | Indicated Value by Income Approach |

Summary of Income Approach (including support for market rent and GRM)

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No   Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| | | |
|---|---|---|
| Total number of phases | Total number of units | Total number of units sold |
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

| | | |
|---|---|---|
| Freddie Mac Form 70 March 2005 | Page 3 of 6 | Fannie Mae Form 1004 March 2005 |

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

RIC080709B1
File # RIC13030637

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Uniform Residential Appraisal Report

RIC08070981
File # R1C13030637

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Main File No. RIC13030637| Page #11

RIC08070981
File # RIC13030637

## Uniform Residential Appraisal Report

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER    Richard A. Carter, SRA | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature  *Richard A. Carter* | Signature _____ |
| Name  Richard Carter, SRA | Name _____ |
| Company Name  North Wind Appraisal | Company Name _____ |
| Company Address  12 Waterboro Rd, Alfred, ME 04002 | Company Address _____ |
| | |
| Telephone Number  (800) 952-0703 | Telephone Number _____ |
| Email Address  rcarter@gwi.net | Email Address _____ |
| Date of Signature and Report  March 15, 2013 | Date of Signature _____ |
| Effective Date of Appraisal  03-01-2013 | State Certification # _____ |
| State Certification #  1250 | or State License # _____ |
| or State License # | State _____ |
| or Other (describe) _____ State # | Expiration Date of Certification or License _____ |
| State  MA | |
| Expiration Date of Certification or License  02/22/2011 | SUBJECT PROPERTY |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 4 Illsley Hill Road | Date of Inspection _____ |
| West Newbury, MA 01985 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $  1,550,000 | Date of Inspection _____ |
| LENDER/CLIENT | |
| Name  Kimberly Foulkes | COMPARABLE SALES |
| Company Name  Newburyport 5 Cents Savings | |
| Company Address  63 State Street, Newburyport, MA | ☐ Did not inspect exterior of comparable sales from street |
| 01950 | ☐ Did inspect exterior of comparable sales from street |
| Email Address  kfoulkes@newburyportbank.com | Date of Inspection _____ |

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Main File No. RIC13030637 Page #12

## Supplemental Addendum

File No. RIC13030637

| | | | | |
|---|---|---|---|---|
| Borrower | L. DeCaprio, S. Stanwood & T. Stanwood | | | |
| Property Address | 4 Illsley Hill Road | | | |
| City | West Newbury | County Essex | State MA | Zip Code 01985 |
| Lender/Client | Newburyport 5 Cents Savings | | | |

### Listing Information
The subject was originally listed on 02-15-2012 for $3,250,000 by Carla Tuzzo Husak of By the
Sea Sotheby's International Realty.  The price was lowered on 08-06-2012 to $2,499,999.  The
listing with Ms. Husak expired on 09-20-2012.

It was re-listed by Robert Bentley of Re Max on the River on 09-20-2012.  The price was reduced
to $1,999,900 on 10-04-2012, $1,899,900 on 10-14-2012, $1,799,900 on 11-02-2012, $1,699,900 on
11-25-2012, and $1,499,900 on 12-10-2012.

It was raised to $1,599,900 on 12-12-2012 and temporarily withdrawn on 12-20-2012.  It was
re-listed on 12-21-2012 and is currently on the market for $1,599,900.

### Assessment and Taxes
The subject is currently assessed as follows:

Land-            $  269,900
Improvements- $1,153,700
Total-           $1,423,300

The tax rate for fiscal 2013 is $15.75 per thousand.
Taxes for fiscal 2013 are $22,416.98.

### Neighborhood Boundaries and Characteristics
The subject is located in the Indian Hill Reservoir portion of the Town of West Newbury.
Neighborhood boundaries are difficult to precisely define.  In general, however, they are
considered to be Moulton Street and adjacent side street to the west, Cherry Hill Street to the
north, Indian Hill Street to the east, and South Street to the south.

### Neighborhood Market Factors
The subject is located on Illsley Hill Road off Moulton Street in the Indian Hill Reservoir
potion of the Town of West Newbury.  The neighborhood was initially developed primarily with 2
to 2.5 story antique colonial style dwellings most of which range in age from 155 to 205 years.
The maintenance and appeal of most of these antique dwellings in the area is very good.  In
addition to the antique style homes, there are a number of houses which were built from the mid
1970s to the present.  Most were built on land which had been used primarily for agricultural
purposes but had been split into smaller lots due to the demand for residential housing and the
decline of agriculture as a viable economic pursuit.

Conservation efforts within the recent past has led to a few large parcels in the area being
purchased or deeded to the Essex County Greenbelt Association particularly around the Indian
Hill Reservoir which lies within the boundaries defined above.  Those parcels, in turn, have
been opened to the public for recreational purposes such as hiking or biking.

Illsley Hill Road is a dead end street off Moulton Street.  Municipal records indicate that six
dwellings have been built along Illsley Hill Road all of which were initially built in the
period from 1981 throughout 1987.  Many are located on large lots making it difficult to
observe from the roadway.

Access to municipal services such as police and fire stations, Town Hall, schools, and public
library is within two miles.

The area has good market appeal due to the relatively large lots, the presence of the
reservoir, and the maintenance and quality of nearby dwellings.

### Neighborhood Market Conditions
Brokers in most areas report that market conditions have improved in 2012 and 2013 due to four
factors.  This includes:
       1.     Low interest rates,
       2.     Decline in foreclosures,
       3.     Perception that prices have "bottomed out" and will not go lower,
       4.     Improvements in economy.

West Newbury, however, continues to be recovering slower than other communities.  This might be
reflective of a number of factors which include:
       1.     Relatively high real estate taxes,
       2.     Rural setting which many buyers no longer find appealing,
       3.     Perceived problems with school system.

### Site Description
The subject site is an irregularly shaped 5.05 acre parcel with 200 feet of road frontage on
Illsley Hill Road.  Although it has frontage on Illsley Hill Road, access to dwelling is gained
by a series of ways over abutter's land to the subject parcel.  The Town plows and
maintains Illsley Hill Road but the abutters maintain the right of way.  The subject is located
at the end of the right of way at the summit of Illsley Hill.  The portion of the site near the
right of way is surrounded by a fence which has an electric gate which opens to admit vehicles.
Panoramic views of Indian Hill Reservoir are offered from the site as well as views of fields
and wooded areas.

The subject parcel is improved with a well and septic system.  Liquid propane is used with two
storage tanks.  One of the two is buried with the second being enclosed in a fenced area.  For
purposes of the appraisal, I am making the assumption that the septic system will pass a Title
V examination.

Although I did not walk the entire site due to ice and snow present, the parcel is located at
the top of Illsley Hill.  However, much of the parcel is at the summit where it appears to be
relatively level.  Other areas slope moderately in a northeasterly direction to its road
frontage.

## Supplemental Addendum

File No. RIC13030637

| Borrower | L. DeCaprio,S. Stanwood & T. Stanwood | | | | |
|---|---|---|---|---|---|
| Property Address | 4 Illsley Hill Road | | | | |
| City | West Newbury | County Essex | | State MA | Zip Code 01985 |
| Lender/Client | Newburyport 5 Cents Savings | | | | |

The site is extensively landscaped and manicured.  One portion is level and improved with an extensive area of grassland which is enclosed with painted wood stock fencing.  Another portion near the dwelling is professionally landscaped with lawn, mature shrubbery, shade trees, stone walkways, and extensive decorative gardens.  Much of the parcel has underground sprinkler systems with a separate well and pressure tank to insure adequate water pressure throughout the irrigated area.

The driveway is paved asphalt that has been treated with crushed stone so that it appears to be entirely crushed stone.  The driveway has curbing along its entire length.

The parcel is in an area zoned "Residential A" which has a minimum lot size of 80,000 square feet with 200 feet of road frontage.  It is legally conforming with current zoning.

I am not aware of any adverse easements, encroachments, or special assessments.

### Subject Dwelling
The subject is a 2.5 story contemporary colonial style dwelling which was originally built in 1985.  A large addition and substantial renovations were completed in 2002.  The dwelling currently has above grade room configuration of 15-4-6 with gross living area of 7,480 square feet.  The living area can be considered in two parts.  Part one is the original dwelling and a single story addition having room configuration of 12-3-4 with 5,988 square feet.  Part two is a two story accessory living unit with room configuration of 3-1-2 with 1,492 square feet.

The following items were noted during the inspection:

### Exterior
The entire complex is built on a poured concrete foundation and has wood clapboard siding.  The roof is gable, hip, and flat and is covered with asphalt shingles, slate, and stone.  Flashing throughout is lead and copper.  Windows are double hung and custom thermalpane.

Most appeared to be in good condition.  However, peeling paint was noted on portions of the exterior as well as slight damage to a garage door.  Given the evidence of peeling paint, most likely a buyer of a dwelling of this size and quality would feel that the entire exterior will need to be re-painted in the near future.

### Interior (First Level-Main Dwelling)
The first level has two offices, large kitchen/breakfast area, formal dining room, living room, rotunda, family area, and a three season area.  The flooring is a combination of hardwood, wall to wall carpeting, marble, and porcelain.  Walls and ceilings are plaster.

The kitchen has custom cherry cabinets with a very large center island.  Counters throughout are granite.  Appliances include a 6 burner Viking stainless steel range/oven, large stainless steel hood, 2 sub zero refrigerators, 4 dishwashers, 2 warming ovens, convection oven, wine cooler, microwave oven, and automatic ice maker.

The bath has marble flooring, custom vanity, and cabinets, and marble shower.

The rotunda/family area overlook the large patio and in ground pool and offers distant views of Indian Hill Reservoir.  The rotunda has a silver ceiling with eight custom windows offering wrap around views.

The three season area has porcelain flooring with plaster walls and plaster cathedral ceilings.  It also has a built in whirlpool spa and a large fireplace which is capable of using both wood and gas.

The offices have a number of built in features.  A hallway off one office has a number of closets and provides access to the garage.

### (Second Level-Main Dwelling)
The second level has three bedrooms, entertainment room over the garage, and three baths.  Bedrooms and entertainment rooms have wall to wall carpeting with plaster walls and ceilings.  Two baths have marble flooring with the third having ceramic tile.  Two have marble wainscoting with the third having ceramic tile.  One has a whirlpool tub with two having steam showers.

Both first and second levels are in very good condition

### (Accessory Unit)
The first level has a lounge with wet bar, three quarter bath, sauna, and sun capsule with the second level having a kitchenette, bedroom, and three quarter bath.

The flooring in the lounge and bath is porcelain with plaster walls and ceilings.  The wet bar has very good quality cabinets with granite counters.  The sauna is large.  The steam shower has two heads with marble surround.

The second level has wall to wall carpeting and porcelain flooring with plaster walls and ceilings.  The bath also has laundry facilities.

### Basement
The entire dwelling has a full basement.  Approximately 10% is finished with a recreation room and full bath.  The balance is used for storage and utilities.

### Utilities
The original dwelling is heated by a forced hot water baseboard by oil heating system which also provides radiant heat in the addition.  There are three 300 gallon oil tanks in the basement.  Hot water is provided off the boiler with a superstore hot water heater.
The accessory unit is heated by a forced hot air by gas heating system.
The main electrical service entrance is 600 amps with a number of sub panels throughout the dwelling.

Main File No. RIC13030537 Page #14

## Supplemental Addendum

File No. RIC13030637

| Borrower | L. DeCaprio, S. Stanwood & T. Stanwood | | | | |
|---|---|---|---|---|---|
| Property Address | 4 Illsley Hill Road | | | | |
| City | West Newbury | County Essex | | State MA | Zip Code 01985 |
| Lender/Client | Newburyport 5 Cents Savings | | | | |

The entire dwelling has central air conditioning with an 11 ton unit with 7 compressors.

Garage
There is a two car attached garage with two overhead doors.

Additional Features
Additional interior features include five fireplaces in both areas and a massive exterior fireplace built with flat stone.

Other features include two covered porches to the front of the dwelling, extensive patios to the rear, second level balcony in accessory unit, large heated pool, and a detached shed.

In addition, there is a 784 square foot two car detached garage with a heated room over the garage.

Environmental Considerations
Although I am not an expert in the detection of adverse environmental conditions, my inspection did not detect any adverse environmental conditions present in the improvements, on the site, or in the immediate vicinity of the subject property.

Estimated Land Value
Land value is based on the following sales:
1.     259 Middle Street, West Newbury.  A 3.03 acre parcel sold on 05-18-2012 for $190,000.

2.     261 Middle Street, West Newbury.  A 3.03 acre parcel sold on 08-08-2012 for $160,000.

3.     25 Wilkes Road, Rowley.  A 2.12 acre parcel sold on 06-07-2012 for $175,000.

Based on the sales provided, the subject's estimated site value as of 03-01-2013 is $275,000.

Direct Sales Comparison Approach
Three sales were used.  Two were from the Town of West Newbury with the third being from the Town of Newbury.  Selling prices for the comparables ranged from $1,075,000 to $1,375,000.

Time
No adjustment was made for time as the market has been stable.

Location/Lot Size
Sale 1 was adjusted at $100,000 for having a superior location with direct water frontage on the Artichoke Reservoir.  Sales 2 and 3 had comparable locations.  Sales were adjusted for having different size lots at $15,000.

Baths/Gross Living Area
Sales were adjusted for half baths at $10,000 and full baths at $20,000.  Sales were adjusted for gross living area at $100 per square foot.

Finished Basement Rooms
Sales were adjusted for finished basement rooms at $2,000 per room and $20,000 per bath.

Garages
Sales were adjusted for garages at $20,000 per bay

Amenities
Sales were adjusted for porches, deck, and balconies at $5,000 per unit.  Sales were adjusted for fireplaces at $5,000 per unit.  Sales were adjusted for outdoor pool-$10,000, shed-$1,000, additional detached garage-$10,000, barn-$15,000, and indoor pool-$10,000.

Adjusted selling prices ranged from $1,413,600 to $1,555,400.

**The subject's estimated value as of 03-01-2013 is $1,550,000.**

Final Reconciliation
The income approach was not used due to the lack of sales of rented single family dwellings and the fact that most single family dwellings are purchased by owner occupants, not investors. The cost approach was used but does not provide a supportive indicator of value.  The direct sales comparison is considered the only viable means to estimate value.

Additional Certifications

10.     I certify that, to the best of my knowledge and belief, the reported analyses, opinions, and conclusions were developed, and this report has been prepared in conformity with the requirements of the Ethics and the Standards of Professional Practice of the Appraisal Institute.

11.     I certify that the use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

12.     As of the date of the report, Richard A. Carter, SRA has completed the continuing education program of the Appraisal Institute.

Main File No. RIC13030637 Page #15

## Comparable Sales Map

| Borrower | L. DeCaprio,S. Stanwood & T. Stanwood | | | | |
|---|---|---|---|---|---|
| Property Address | 4 Illsley Hill Road | | | | |
| City | West Newbury | County Essex | | State MA | Zip Code 01985 |
| Lender/Client | Newburyport 5 Cents Savings | | | | |



Main File No. RIC13030637 Page #16

## Subject Photo Page

| Borrower | L. DeCaprio, S. Stanwood & T. Stanwood | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 4 Illsley Hill Road | | | | | |
| City | West Newbury | County | Essex | State MA | Zip Code | 01985 |
| Lender/Client | Newburyport 5 Cents Savings | | | | | |



**Front of Dwelling**

| | |
|---|---|
| | 4 Illsley Hill Road |
| Sales Price | N/A |
| Gross Living Area | 7,480 |
| Total Rooms | 15 |
| Total Bedrooms | 4 |
| Total Bathrooms | 6 |
| Location | Good |
| View | Reservoir |
| Site | 5.05 Acres |
| Quality | Very Good |
| Age | 28/11 |



**Rear of Dwelling**



**Street Scene**

Main File No. RIC13030637 Page #17

## Subject Photo Page

| Borrower | L. DeCaprio, S. Stanwood & T. Stanwood | | | | |
|---|---|---|---|---|---|
| Property Address | 4 Illsley Hill Road | | | | |
| City | West Newbury | County Essex | | State MA | Zip Code 01985 |
| Lender/Client | Newburyport 5 Cents Savings | | | | |



**Front of Dwelling**

| | |
|---|---|
| | 4 Illsley Hill Road |
| Sales Price | N/A |
| Gross Living Area | 7,480 |
| Total Rooms | 15 |
| Total Bedrooms | 4 |
| Total Bathrooms | 6 |
| Location | Good |
| View | Reservoir |
| Site | 5.05 Acres |
| Quality | Very Good |
| Age | 28/11 |



**Rear of Dwelling**



**Street Scene**

Main File No. RIC13030637| Page #18

### Subject Photo Page

| Borrower | L. DeCaprio,S. Stanwood & T. Stanwood | | | | |
|---|---|---|---|---|---|
| Property Address | 4 Illsley Hill Road | | | | |
| City | West Newbury | County Essex | | State MA | Zip Code 01985 |
| Lender/Client | Newburyport 5 Cents Savings | | | | |



**Pool**

| | |
|---|---|
| | 4 Illsley Hill Road |
| Sales Price | N/A |
| Gross Living Area | 7,480 |
| Total Rooms | 15 |
| Total Bedrooms | 4 |
| Total Bathrooms | 6 |
| Location | Good |
| View | Reservoir |
| Site | 5.05 Acres |
| Quality | Very Good |
| Age | 28/11 |



**Pool with Water View**



**Pool with Shed**

Main File No. RIC13030637 Page #19

## Subject Photo Page

| Borrower | L. DeCaprio, S. Stanwood & T. Stanwood | | | | |
|---|---|---|---|---|---|
| Property Address | 4 Illsley Hill Road | | | | |
| City | West Newbury | County Essex | | State MA | Zip Code 01985 |
| Lender/Client | Newburyport 5 Cents Savings | | | | |



**2 Car Detached Garage**

| | |
|---|---|
| | 4 Illsley Hill Road |
| Sales Price | N/A |
| Gross Living Area | 7,480 |
| Total Rooms | 15 |
| Total Bedrooms | 4 |
| Total Bathrooms | 6 |
| Location | Good |
| View | Reservoir |
| Site | 5.05 Acres |
| Quality | Very Good |
| Age | 28/11 |



**Subject Site**

Main File No. BIC13030637 Page #20

## Comparable Photo Page

| | |
|---|---|
| Borrower | L. DeCaprio, S. Stanwood & T. Stanwood |
| Property Address | 4 Illsley Hill Road |
| City West Newbury | County Essex | State MA | Zip Code 01985 |
| Lender/Client | Newburyport 5 Cents Savings |



### MLS Photo 1

| | |
|---|---|
| 78 Rogers Street | |
| Prox. to Subject | 1.89 miles NE |
| Sales Price | 1,375,000 |
| Gross Living Area | 5,446 |
| Total Rooms | 11 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.5 |
| Location | Very Good |
| View | Reservoir |
| Site | 2.61 Acres |
| Quality | Very Good |
| Age | 8 |



### MLS Photo Comp 2

| | |
|---|---|
| 5 Kimball Road | |
| Prox. to Subject | 1.13 miles NW |
| Sales Price | 1,150,000 |
| Gross Living Area | 3,757 |
| Total Rooms | 11 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.5 |
| Location | Good |
| View | Pastoral |
| Site | 7.71 Acres |
| Quality | Very Good |
| Age | 8 |



### MLS Photo Comp 3

| | |
|---|---|
| 251 Middle Road | |
| Prox. to Subject | 3.24 miles SE |
| Sales Price | $1,075,000 |
| Gross Living Area | 5,014 |
| Total Rooms | 10 |
| Total Bedrooms | 4 |
| Total Bathrooms | 5 |
| Location | Good |
| View | Parker River |
| Site | 2.3 Acres |
| Quality | Very Good |
| Age | 47/7 Eff 10 |

Main File No. RIC13030637| Page #21

**Deed – Page 1**

Louis P. DeCaprio and Scott Stanwood

01/13/00  9:20  inst. 24
BK 16149 PG 513

of 4 Illesley Hill Road, West Newbury, Essex

County, Massachusetts

in consideration of  $1.00

grant  to  Louis P. DeCaprio, Scott Stanwood and Todd M. Stanwood, as joint tenants

of  4 Illesley Hill Road, West Newbury, Massachusetts

with  quitclaim covenants

~~hereinbelow~~

See Exhibit "A" attached hereto.

PROPERTY ADDRESS: 4 Illesley Hill Road
West Newbury, MA

Executed as a sealed instrument this    22nd        day of  December,            1999

Scott Stanwood

The Commonwealth of Massachusetts

Essex        ss.                                                December 22 1999

Then personally appeared the above named      Louis P. DeCaprio and Scott Stanwood

and acknowledged the foregoing instrument to be  their  free act and deed,

Before me,  Gary F. Ritter                                    Notary Public

My commission expires    4/15/05

Main File No. RIC13030637| Page #22

**Deed - Page 2**

BK 16149 PG 514

EXHIBIT "A"

The land with the buildings thereon situated in West Newbury, Massachusetts, being Lot 1 on "Plan of Land in West Newbury, Massachusetts as Surveyed for George E. Tudor, Sept. 1979, Cammett and Kutensky Engineering , Inc." recorded with Essex South District Registry of Deeds in Plan Book 156, Plan 34 and more particularly bounded and described as follows:

| | |
|---|---|
| NORTHEASTERLY | by Illsley Hill Road, 14.70 feet and 185.30 feet, respectively; |
| SOUTHEASTERLY | by land now or formerly of Burr, 404.75 feet; |
| SOUTHWESTERLY | by land now or formerly of Walsh, 302.67 feet; again |
| SOUTHEASTERLY | by land now or formerly of Walsh, 301.47 feet and 248.11 feet, respectively; again |
| SOUTHWESTERLY | by land now or formerly of Rooney, 28.43 feet, 188.70 feet and 28.82 feet, respectively; |
| NORTHWESTERLY | by land now or formerly of Rooney, 145 feet; |
| NORTHERLY | by Lot 2 and Right of Way, 439.49 feet; 48.40 feet and 100.90 feet, respectively; again |
| NORTHEASTERLY | by said Lot 2, 332 feet; and again |
| NORTHWESTERLY | by said Lot 2, 190 feet. |

Be all said measurements more or less, or however otherwise bounded and described; being the premises shown as Lot 1 on said plan.

Containing 5.05 acres, more or less, of land according to said plan.

Subject to and together with any and all easements, restrictions and conditions of record insofar as now in force and applicable.

Being the same premises conveyed to the grantor by deed of Richard F. Brown et ux, and dated May 24, 1991 and recorded in said Registry in Book 10806, Page 67.

Main File No. RIC13030037| Page #23|

**Recorded Plan**



Main File No. RIC13030537 | Page #24

### Flood Map

| Borrower | L. DeCaprio, S. Stanwood & T. Stanwood | | | | |
|---|---|---|---|---|---|
| Property Address | 4 Illsley Hill Road | | | | |
| City | West Newbury | County Essex | | State MA | Zip Code 01985 |
| Lender/Client | Newburyport 5 Cents Savings | | | | |



Main File No. RIC 13030637 | Page #

# Building Sketch

| Borrower | L. DeCaprio, S. Stanwood & T. Stanwood | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 4 Illsley Hill Road | | | | | |
| City | West Newbury | County | Essex | State | MA | Zip Code 01985 |
| Lender/Client | Newburyport 5 Cents Savings | | | | | |



Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA1 | First Floor | 4273 | 4273 |
| GLA2 | Second Floor | 2461 | |
| | Second Floor | 746 | 3207 |
| DSMT | Basement | -4273 | -4273 |
| P/P | Covered Porch | -72 | |
| | Covered Porch | -80 | |
| | Covered Porch | -200 | |
| | Balcony | -272 | -624 |
| GAR | Garage | -520 | |
| | Garage | -784 | |
| | Ht Area over Garage | -616 | -1920 |
| Net LIVABLE Area | | (Rounded) | 7480 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| | 6 x 26 | 156 |
| | 17 x 18 | 306 |
| | 4 x 13 | 52 |
| | 4 x 29 | 116 |
| | 17 x 34 | 578 |
| | 20 x 38 | 760 |
| | 24 x 28 | 672 |
| | 19 x 26 | 494 |
| | 14 x 27 | 378 |
| | 8 x 13 | 104 |
| 0.5 x | 2 x 5 | 5 |
| 0.5 x | 4 x 1 | 2 |
| 0.5 x | 1 x 2 | 1 |
| | 2 x 4 | 7 |
| 0.5 x | 2 x 5 | 5 |
| 0.5 x | 4 x 1 | 2 |
| 0.5 x | 1 x 2 | 1 |
| | 2 x 4 | 7 |
| 0.5 x | 13 x 21 | 139 |
| 0.5 x | 3 x 16 | 22 |
| | 11 x 17 | 194 |
| 0.5 x | 17 x 0 | 2 |
| 0.5 x | 0 x 4 | 0 |
| 0.5 x | 12 x 10 | 58 |
| 0.5 x | 2 x 2 | 2 |
| | 2 x 15 | 34 |
| | 4 x 17 | 72 |
| 13 Items Not Listed | | 3314 |
| 40 Items | (Rounded) | 7480 |

Resume – Page 1

**Richard A.
Carter**

**North Wind
Appraisal**

12 Waterboro Road
Alfred, ME 04002
207-490-1940-Office
207-490-1940-Fax
978-376-0728
rcarter@gwi.net

**Professional Qualifications**

**Designations**

SRA, Appraisal Institute, Chicago, IL (December 2006)

**Employment History**

North Wind Appraisal, 12 Waterboro Road, Alfred, ME 04002

Residential and Commercial Real Estate Appraiser

January 1991 to Present

Principal of Appraisal Business involved in the valuation of commercial and residential real estate. Manage and direct appraisal staff as well as complete individual assignments. Oversee review and approval of appraisals and reviews. Performed assignments for banks, mortgage companies, law firms, and individuals. Qualified expert witness in Rockingham County (NH) Superior Court and Essex County (MA) Family Court.

Scott's Appraisal Services, Route One Traffic Circle, Newburyport, MA 01950

Residential Real Estate Appraiser

January 1986 to December 2000

Employee of appraisal firm involved in the valuation of residential real estate. Performed assignments for banks, mortgage companies, law firms, and individuals.

**Education**

M.S. Health Dynamics 1979
Sargent College of Allied Health Professions, Boston University, Boston, Massachusetts

B.A. United States History 1972
University of Massachusetts, Amherst, Massachusetts

**Professional Workshops and Courses (Partial List)**

2012
7 Hour USPAP Update

2011
General Appraiser Site Valuation and Cost Approach
Uniform Appraisal Data Set-Fannie Mae and Freddie Mac

Main File No. RIC13030637 Page #27

**Resume - Page 2**

2010
Appraisal Curriculum Overview
FHA and the Appraisal Process
Small Hotel/Motel Evaluation
7 Hour USPAP Update

2009
Using Spreadsheet Programs in Real Estate Appraisals
Appraising Historic Preservation Easements
Spotlight, The New Residential Market Conditions Form

2008
Condominium, Coops, and PUDs
Quality Assurance in Residential Appraisals
Office Building Valuation-A Contemporary Perspective
7 Hour USPAP Update

2007
Land Valuation Adjustment Procedures
Land Valuation Assignments
Business Practice and Ethics
Supporting Sales Comparison Grid Adjustments
Convincing Residential Appraisals

**Other Experience**

President Maine Chapter Appraisal Institute-,2007, 2008
Chairman Education Committee, Maine Chapter Appraisal Institute-2003-2005
Town of Alfred, Board of Assessment Review, 2007-2009

**References**

References are available on request.

Main File No. RIC13030637| Page #28

**Certification**



COMMONWEALTH OF MASSACHUSETTS

DIVISION OF PROFESSIONAL LICENSURE - BOARD OF
REAL ESTATE APPRAISERS
CERT. GEN. REAL ESTATE APPRAISER

ISSUES THE ABOVE LICENSE TO

RICHARD A. CARTER

165 FEDERAL ST

ALFRED  ME 04002-3126

1250  02/22/14  977744

LICENSE NO.  EXPIRATION DATE  SERIAL NO.

Fold Then Detach Along All Perforations

Signature

EXHIBIT   D-1

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

|  |  |
|---|---|
| In Re:<br><br>TODD M. STANWOOD,<br><br>DEBTOR | CHAPTER 7<br><br>CASE NO. 13- 14003- FJB |

## ORDER ALLOWING RELIEF FROM THE AUTOMATIC STAY

This matter having come before the Court by Motion of secured creditor, the Newburyport Five Cents Savings Bank (the "Bank"), for Relief from the Automatic Stay; notice of this Motion having been given to all interested parties, and after hearing it is hereby ordered that the automatic stay imposed by 11 U.S.C. Sec. 362(a) is hereby lifted to permit the Bank to repossess, foreclose its mortgage on the Debtor's real estate located at 4 Illsley Hill Road, West Newbury, Massachusetts 01985 (the "Property"), and otherwise exercise its rights and remedies with respect to the Property in accordance with the applicable nonbankruptcy law. The fourteen-day stay is waived pursuant to Fed. R. Bankr. P. 4001(a)(3) as movant's request for such waiver has been supported by a showing of good cause.

Dated: _____                    _____
                                                     Frank J. Bailey, Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

In Re:                                            CHAPTER 7

TODD M. STANWOOD,                  CASE NO. 13- 14003- FJB

DEBTOR

## ORDER ALLOWING RELIEF FROM THE AUTOMATIC STAY

This matter having come before the Court by Motion of secured creditor, the Newburyport Five Cents Savings Bank (the "Bank"), for Relief from the Automatic Stay; notice of this Motion having been given to all interested parties, and after hearing it is hereby ordered that the automatic stay imposed by 11 U.S.C. Sec. 362(a) is hereby lifted to permit the Bank to repossess, foreclose its mortgage on the Debtor's real estate located at 4 Illsley Hill Road, West Newbury, Massachusetts 01985 (the "Property"), and otherwise exercise its rights and remedies with respect to the Property in accordance with the applicable nonbankruptcy law.

Dated: _____        _____
                                  Frank J. Bailey, Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |
|---|---|
| In Re:<br><br>TODD M. STANWOOD,<br><br>DEBTOR | CHAPTER 7<br><br>CASE NO. 13-14003- FJB |

## AFFIDAVIT OF KIMBERLEY A. FOULKES, SENIOR VICE PRESIDENT OF THE NEWBURYPORT FIVE CENTS SAVINGS BANK IN SUPPORT OF THE BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

I, Kimberley A. Foulkes, the undersigned, do hereby state of my own personal knowledge and under oath as follows:

1. I am a Senior Vice President of secured creditor Newburyport Five Cents Savings Bank, a Massachusetts bank having its principal place of business at 63 State Street, Newburyport, Essex County, Massachusetts (the "Bank").

2. On or about November 15, 2003, Debtor and co-owners, Scott Stanwood and Louis P. DeCaprio (hereinafter referred to as the "Co-Borrowers"), jointly and severally, executed and delivered to the Bank a Promissory Note in the original principal amount of $3,100,000.00 (the "Note"), which Note is secured by a first mortgage dated November 15, 2003 (the "Mortgage") on the real estate of Debtor and Co-Borrowers located at 4 Illsley Hill Road, West Newbury, Massachusetts (the "Property"). Said mortgage is recorded at the Essex South District Registry of Deeds at Book 22095, Page 273.

3. The Note and Mortgage are in default by reason of the failure of Debtor to pay when due the principal, interest and other amounts due thereunder, including real estate taxes.

4. According to the Town of West Newbury, the real estate taxes owed on the Property are delinquent, and the amounts past due and unpaid as of July 19, 2013 are $31,003.07. Attached hereto as <u>Exhibit A-1</u> is a Owner Balance Calculated Through 7/19/2013 by the Town of West Newbury of amounts past due for real estate taxes.

5.    The Debtor's Mortgage is presently twenty-four (24) months in arrears. As of the filing

of the Debtor's Chapter 7 petition on July 1, 2013, the Debtor owed the Bank the amount

of $382,722.93 in pre-petition arrearages. The Debtor and Co-Borrowers have also failed

to make any mortgage payments to the Bank since the filing of the Debtors petition on

July 1, 2013.

6.    As of July 2, 2013, the outstanding balance due under the Note is $3,014,383.04, which

includes the principal amount of $2,741,420.87, interest through July 2, 2013 in the

amount of $240,255.08, late charges in the amount of $11,496.47, and expenses in the

amount of $21,210.62. Interest continues to accrue at the per diem rate of $380.75.


Signed under the pains and penalties of perjury this 19th day of July, 2013.


Kimberley A. Foulkes, Senior Vice President
Newburyport Five Cents Savings Bank

# Owner Balance Calculated Through 7/19/2013

| | Tax | Liens | Interest | Fees | Total | PerDiem |
|---|---|---|---|---|---|---|
| **Real Estate** | | | | | | |
| 2014 | 061700420   70-0-14C | | 4 ILLSLEY HILL RD | DECAPRIO LOUIS P | | |
| | $5,980.04 | $0.00 | $0.00 | $0.00 | $5,980.04 | $0.000 |
| 2013 | 061700420   70-0-14C | | 4 ILLSLEY HILL RD | DECAPRIO LOUIS P | | |
| | $23,042.24 | $0.00 | $1,960.79 | $20.00 | $25,023.03 | $8.838 |
| **Grand Total** | $29,022.28 | $0.00 | $1,960.79 | $20.00 | $31,003.07 | $8.838 |

## OFFICIAL LOCAL FORM 7

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

IN RE:                                                    Case No.  13-14003- FJB

       TODD M. STANWOOD,                        Chapter  7

          Debtor

### DECLARATION RE:  ELECTRONIC FILING

## PART I - DECLARATION

I, Kimberley A. Foulkes, Senior Vice President, Newburyport Five Cents Savings Bank, hereby declare under penalty of perjury that all of the information contained in the Motion of the Newburyport Five Cents Savings Bank for Relief from the Automatic Stay and the Affidavit of Kimberley A. Foulkes, Senior Vice President of the Newburyport Five Cents Savings Banks in Support of the Bank's Motion for Relief from the Automatic Stay (singly or jointly the "Document"), filed electronically, is true and correct.  I understand that this DECLARATION is to be filed with the Clerk of Court electronically concurrently with the electronic filing of the Document.  I understand that failure to file this DECLARATION may cause the Document to be struck and any request contained or relying thereon to be denied, without further notice.

I further understand that, pursuant to the Massachusetts Electronic Filing Local Rule (MEFR) 7(b), all paper documents containing original signatures executed under the penalties of perjury and filed electronically with the Court are the property of the bankruptcy estate and shall be maintained by the authorized CM/ECF Registered User for a period of five (5) years after the closing of this case.

Dated: July 19, 2013

                            Kimberley A. Foulkes, Senior Vice President
                            Newburyport Five Cents Savings Bank

## PART II – DECLARATION OF ATTORNEY (IF AFFIANT IS REPRESENTED BY COUNSEL)

I certify that the affiant signed this form before I submitted the Document, I gave the affiant a copy of the Document and this DECLARATION, and I have followed all other electronic filing requirements currently established by local rule and standing order.  This DECLARATION is based on all information of which I have knowledge and my signature below constitutes my certification of the foregoing under Fed.R.Bankr.P. 9011.  I have reviewed and will comply with the provisions of MEFR 7.

Dated: July 19, 2013                          Signed: _____

                                 James T. Connolly

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | |
|---|---|
| In Re:<br><br>      TODD M. STANWOOD,<br><br>            DEBTOR | CHAPTER 7<br><br>CASE NO. 13-14003- FJB |

### CERTIFICATE OF SERVICE

I, James T. Connolly, Esq., of the law firm of Connolly & Connolly, counsel for Newburyport Five Cents Savings Bank, hereby certify that I have this 19th day of July 2013, served the Motion of the Newburyport Five Cents Savings Bank for Relief from the Automatic Stay along with Exhibits A, B, C, and D with this Certificate of Service, Affidavit of Kimberley A. Foulkes, Senior Vice President of the Newburyport Five Cents Savings Bank in Support of the Bank's Motion for Relief from Automatic Stay with Exhibit A-1, and Declaration of Electronic Filing, by causing copies hereof to be sent by electronic mail via the electronic court filing system, to the following:

Kathleen P. Dwyer, Esq.
MacLean Holloway Doherty Ardiff & Morse
8 Essex Center Drive
Peabody, MA 01960
kdwyer@mhdpc.com
(Attorney for Debtor)

John O. Desmond
Trustee
24 Union Avenue
Framingham, MA 01702
trustee@jdesmond.com

John Fitzgerald
Assistant U.S. Trustee
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109
USTPRegion01.BO.ECF@USDOJ.GOV

I certify that I have mailed by first class mail, postage prepaid the documents electronically filed with the Court on the following non-CM/ECF participants:

American Express Bank FSB
P.O. Box 30384
Salt Lake City, Utah 84130

American Express Bank FSB
*C/o:* Erin M. Reczek
Zwicker & Associates, P.C.
200 Minuteman Road
Suite 202
Andover, MA 01810

Sovereign Bank N.A.
*C/o:* Attorney Lauren A. Solar
Bartlett Hackett Feinburg P.C.
155 Federal Street
9th Floor
Boston, MA 02110

Santander Sovereign Bank N.A.
P.O. Box 12646
Reading, PA 19612

Lease Corporation of America
Attorney Lewis J. Cohn
Cohn & Dussi, LLC
300 Trade Center
Suite 3700
Woburn, MA 01801

Lease Corporation of America
3150 Livernois
Suite 300
Troy, MI 48083

Town of West Newbury
Office of the Collector of Taxes
381 Main Street
West Newbury, MA 01985

Louis P. DeCaprio
4 Illsley Hill Road
West Newbury, MA 01985

Scott Stanwood
4 Illsley Hill Road
West Newbury, MA 01985

Todd M. Stanwood
4 Illsley Hill Road
West Newbury, MA 01985

Direct Capital Corporation
155 Commerce Way
Portsmouth, NH 03801

Direct Capital Corporation
*C/o:* Goldberg & Oriel
1671 Worcester Road
Suite 403
Framingham, MA 01701

Massachusetts Department of Revenue
P.O. Box 7021
Boston, MA 02204

/s/ James T. Connolly
James T. Connolly